UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                          :
LAUREN JULIFF,                      :
                          :
              Plaintiff,       :
                          :          20 Civ. 699 (JPC)
        -v-                  :
                          :           OPINION
HEADOUT, INC.,               :      AND ORDER
                          :
             Defendant.     :
                          :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Lauren Juliff sued Headout, Inc. for infringing her copyright of a photograph of a building in Singapore by posting it on Headout's travel website without her permission. The parties have stipulated to Headout's liability, leaving the Court to decide the amount, if any, of damages and costs. The Court awards Juliff $545 in damages and $441.20 in costs for the reasons that follow.

## I. Background

      On December 19, 2011, Juliff published a photograph she took of a colorful building in Little India, Singapore (the "Photograph") to her personal website. *See* Dkt. 26 ("Juliff Declaration") ¶ 5, Exh. A. On June 28, 2019, she registered a copyright in the Photograph with the United States Copyright Office. *See id*. at ¶ 4, Exh. B.

      In 2018, Headout, a travel and tourism company, published the Photograph on its own website, without Juliff's permission, to promote a walking tour in Little India, Singapore. *See id.* at ¶¶ 6-7, Exh. C; Dkt. 21 ("Stipulation and Order"). The image appeared prominently at the top of the page for this tour, followed by other information about the tour. *See* Juliff Declaration, Exh. C; Dkt. 1 ("Complaint"), Exh. B. The Little India tour was one of many tours that Headout offered

on its website.  *See* Juliff Declaration ¶ 7, Exh. D.

Juliff commenced this suit on January 27, 2020, bringing one claim of copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*  Complaint ¶¶ 13-17.  In its Answer, Headout acknowledged that "an imagine materially similar to [the Photograph] appeared on its website," and represented that "it removed the photograph immediately upon being served with the Complaint."  Dkt. 8 at ¶ 10.  In late January 2021, the parties stipulated to a judgment against Headout on liability for copyright infringement, Stipulation and Order ¶ 3, with Juliff to seek only actual damages and/or Headout's profits pursuant to 17 U.S.C. § 504(b) and costs under Federal Rule of Civil Procedure 54(d), without prejudice to Headout's right to oppose such relief, *id.* ¶ 2.  Juliff now seeks actual damages and costs.[1]

## II.  Discussion

Both parties have advocated for their own method of calculating damages.  For reasons that follow, the Court declines to adopt either party's calculation and instead awards Juliff $545 in damages based on the Court's assessment of the fair market value of the use.  The Court also grants Juliff's request for costs in the amount of $441.20.

### A.  Damages

Title 17, United States Code, Section 504(b) allows owners of infringed copyrights to recover "actual damages suffered by him or her as a result of the infringement."  Actual damages "compensate the owner for any harm [the owner] suffered by reason of the infringer's illegal act."

---

[1] Under the Copyright Act, "an infringer of copyright is liable for either -- (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." 17 U.S.C. § 504(a); *accord Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819 (GBD) (BCM), 2019 WL 1223965, at *1 (S.D.N.Y. Mar. 19, 2019) (explaining that under section 504(a), a copyright infringer is liable for *either* the owner's actual damages and the infringer's additional profits *or* statutory damages).  Here, Juliff has elected to seek her actual damages and is not seeking Headout's profits.

*On Davis v. The Gap., Inc.*, 246 F.3d 152, 159 (2d Cir. 2001).  Such damages include "the market value of the fee the owner was entitled to charge" for the defendant's use.  *Id.* at 165; *see Cuffaro v. Fashionisto LLC*, No. 19 Civ. 7265 (GBD) (KHP), 2020 WL 5077449, at *3 (S.D.N.Y. July 9, 2020) ("The Copyright Act grants courts discretion in calculating the actual damages sustained by a prevailing party, as long as the claim is reasonable according to typical market values." (internal quotation marks and citation omitted)), *report and recommendation adopted*, 2020 WL 5076826 (S.D.N.Y. Aug. 27, 2020); *accord McGlynn v. Towers Investors.com Inc.*, No. 19 Civ. 89 (PAE) (GWG), 2021 WL 1777758, at *5 (S.D.N.Y. May 5, 2021), *report and recommendation adopted*, (S.D.N.Y. June 3, 2021).  The question for the court "is not what the owner would have charged, but rather what is the fair market value." *On Davis*, 246 F.3d at 166.  To calculate this "fair market value," a court must determine "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Id.* at 167.

The burden of proof is on the owner and the defendant must be "protected against an unreasonably exaggerated claim." *Id.* at 166.  In evaluating a fair damages award, this Court "may rely on affidavits or documentary evidence." *Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 408 (S.D.N.Y. 2004) (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)); *see On Davis*, 246 F.3d at 163 (explaining that the award must be based "on a factual basis rather than undue speculation").  In doing so, the Court may look to the fees charged by regular participants in the media licensing market. *See On Davis*, 246 F.3d at 167.  As discussed below, both parties suggest that the Court's assessment of damages consider photographs commercially licensed by Getty Images, a stock photograph agency. *See* Dkt. 24 at 3-4; Juliff Declaration ¶ 9, Exh. E; Dkt. 29 ("Opposition") at 5; Dkt. 28 ("Rao Declaration") ¶ 17, Exh. D.  Courts in this Circuit have relied on several forms of evidence to arrive at a non-speculative estimate of the fair

market value of an infringed license, including consulting benchmark license fees estimated by the price calculator tool on Getty Images's website. *See, e.g.*, *Cuffaro*, 2020 WL 5077449, at *4; *Terry v. Masterpiece Advert. Design*, No. 17 Civ. 8240 (NRB), 2018 WL 3104091, at *4 n.5 (S.D.N.Y. June 21, 2018); *Romanowicz v. Alister & Paine, Inc.*, No. 17 Civ. 8937 (PAE) (KHP), 2018 WL 4762980, at *4 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2008 WL 4759768 (S.D.N.Y. Oct. 1, 2018); *Ozuzu v. Function(x), Inc.*, No. 18 Civ. 6799 (ER), 2020 WL 4926247, at *1 (S.D.N.Y. Aug. 21, 2020); *see also McGlynn*, 2021 WL 1777758, at *5 ("We accept that screenshots from the price calculator provided by the Getty Images website in some circumstances may aid in determining the fair market value for a licensing fee of a photograph.").

The Getty Images website permits potential customers input parameters into its calculator to generate a price that reflects the use that the licensor would put the licensed photograph to. Thus, courts consulting Getty Images values must ensure that the generated values match the facts of the case. *See On Davis*, 246 F.3d at 166 n.5 (explaining that fair market value "is not of the highest use for which the plaintiff might license but the use the infringer made"); *accord Eva's Photography, Inc. v. Alisa, LLC*, No. 20 Civ. 1617 (MKV), 2020 WL 2904848, at *1 (S.D.N.Y. June 3, 2020).[2]  The Court also may on its own adjust the parameters utilized by a plaintiff to arrive at a photograph's appropriate market value. *See Terry*, 2018 WL 3104091, at *4.

While both parties suggest using Getty Images, they offer contrasting benchmarks to value the damages caused by the Headout's infringement.  Juliff suggests using a different photograph of Little India, Singapore that Getty Images licenses under certain conditions for $2,145. *See* Juliff

---

[2]  The Second Circuit in *On Davis* offered a helpful example to illustrate this point: "assuming the defendant made infringing use of a Mickey Mouse image for a single performance of a school play before schoolchildren, teachers and parents with tickets at $3, the fair market value would not be the same as the fee customarily charged by the owner to license the use of this image in a commercial production." 246 F.3d at 166 n.5.

Declaration ¶ 9.  To reach this amount, Juliff uses parameters for a one-year license for use in a full-page travel brochure cover with an electronic circulation of up to 500,000 in the United States. *See id.*  Headout suggests alternatives.  These include Getty Images photographs of colorful buildings in other cities and a photograph on Alamy, another stock photography agency, of the same building that Juliff photographed.  *See* Rao Declaration, Exhs. D, E.  Headout contends that the Getty Images photographs would yield a license of around $375, and the Alamy photograph would yield a license of $59.99.  *See id.*  The Court is not persuaded that any of these proposed calculations would yield a fair market value that reflects Headout's actual use of the Photograph.

To start, while Juliff points to a Getty Images photograph of the same neighborhood, Little India in Singapore, depicted in the Photograph, her parameters do not match the facts of Headout's infringement.  First, Headout used the Photograph on digital media, namely, its website, not a travel brochure.  Second, the infringing web page was not the home page, but rather on a secondary page only for the Little India tour.  Third, the Photograph took up less than half of the page, not the full page, and was joined by other images and text.

Headout's alternatives fare no better.  First, Headout submits to the Court an array of colorful buildings, presumably from various locations, that are offered for license by Getty Images. *See* Rao Declaration ¶ 17, Exh. D.  But none of these photographs appear to be from Little India, Singapore.  *See id.*, Exh. D.  Headout used the Photograph to advertise a tour of Little India, and comparisons to photographs from elsewhere are not persuasive.

Headout's second alternative is based on a licensing fee from Alamy for a photograph that appears to be of the same building in Little India that is depicted in the Photograph.  *See* Rao Declaration, Exh. E.  While it certainly is more useful for Headout to offer a comparison photograph that is closer to the image in the Photograph, the Court declines to rely on the licensing

price from Alamy.  Headout has provided no information on Alamy, other than a declaration from

its attorney stating that the "photograph is offered for a five-year commercial use, worldwide

license for a fee of $59.99." *Id.* ¶ 18.  Headout has not described what parameters were used to

generate that purchase price, and the attached screenshot merely says, "Marketing package: Small

business," with a corresponding price of $59.99.  *Id.*, Exh. E.  Nor has Headout identified any court

that has relied on Alamy to measure actual damages in copyright cases.  In contrast, as noted above,

courts have regularly relied upon Getty Images, which is the outlet proposed by Juliff (and even

by Headout).  While reasonable minds could differ on the likely market price of a license to use

Juliff's photograph, "ambiguities [in copyright damages] should be resolved in favor of the

copyright owner."  *On Davis*, 246 F.3d at 164 (quoting William F.  Patry, *Copyright Law and

Practice* 1167 (1994)).[3]

The Court therefore will rely on Getty Images, employing adjusted parameters that more

closely reflect Headout's actual use of the Photograph.  *See, e.g.*, *Terry*, 2018 WL 3104091, at *4

("While we reject the specific parameters that [the plaintiff] has used to price a license from Getty

Images for the [copyrighted] photograph, Getty Images's pricing utility allows us to adjust the

usage specifications to better reflect the [infringing] advertisement.").  In particular, the Court has

---

[3] Juliff argues in her reply brief that Headout failed to produce the comparison photographs
from Getty Images and Alamy in discovery, violating its obligation to supplement initial
disclosures under Federal Rule of Civil Procedure 26(e).  *See* Dkt.  30 ("Reply") at 1-3.  And
"[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not
allowed to use that information . . . to supply evidence on a motion. . . unless the failure was
substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Design Strategy, Inc. v.
Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (describing the so-called "automatic" sanction).  But the
party seeking the Rule 37 sanction bears the burden of proving nondisclosure, *see Lodge v. United
Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011) (citing *In re Sept. 11th Liab. Ins.
Coverage Cases*, 243 F.R.D. 114, 131-32 (S.D.N.Y. 2007)), which Juliff has not done, having only
asserted the failure to disclose in a reply brief.  Regardless, because the Court is not persuaded that
the comparison photographs offered by Headout would yield a fair market value for the
infringement, it is not necessary for the Court to determine whether to exclude them.

used the Getty Images price calculator tool for the Photograph, setting parameters of a one-year license for a half-page photograph on a secondary tourism promotion web page.  *See Colorful Shophouses on Kerbau Road*, GETTY IMAGES, https://www.gettyimages.com/detail/news-photo/colorful-shophouses-on-kerbau-road-news-photo/665553172?adpopup (last visited Aug. 30, 2021).  This yields a cost of $545, and the Court will award damages to Juliff in that amount.

## B. Costs

Section 505 grants the Court the discretion to award court costs to prevailing copyright litigants.  17 U.S.C. § 505.  In opposing costs, Headout suggests that this litigation was "abusive and frivolous," and could have been avoided, pointing to Juliff's counsel's supposed reputation for "fil[ing] volume litigation in the hopes of shaking down defendants."  Opposition 5-6.  While Juliff's counsel has an "ignominious record of reprimands and sanctions from judges across the country," *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 267 (2d Cir. 2021), the stipulation of liability convinces the Court that this particular lawsuit was not frivolous.  The Court has reviewed an itemization of the costs incurred in this action, which entail a filing fee of $400 and a service of process cost of $41.20.  *See* Dkt. 25 ¶ 3, Exh. A.  The Court finds these costs to be sufficiently documented and reasonable, and in line with the type of costs typically reimbursed by judges in this District.  *See Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 200 (S.D.N.Y. 2016).  Accordingly, the Court awards Juliff costs in the amount of $441.20.

### III.  Conclusion

For the foregoing reasons, including the parties' stipulation of Headout's liability, Juliff's motion for judgment, Dkt. 23, is granted and the Court awards Juliff $545 in damages and $441.20 in costs.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 23 and close this case.

SO ORDERED.


Dated: August 31, 2021
       New York, New York                          _____
                                                          JOHN P. CRONAN
                                                   United States District Judge